## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("Settlement Agreement") is entered into by and between the Parties, Plaintiff Taquilla Hatch ("Plaintiff"), in her individual and representative capacity on behalf of all Opt-In Plaintiffs in the Lawsuit, and Defendants Centene Corporation, Centene Management Company, LLC, and Arkansas Total Health, Inc. ("Defendants") (collectively, the "Parties").

WHEREAS, Plaintiff was designated as the representative of all plaintiffs who have joined as Opt-In Plaintiffs in the case captioned *Hatch v. Arkansas Total Care, Inc. et al.*, Case No. 4:18-cv-00580-JM (E.D. Ark.) (the "Lawsuit");

WHEREAS, the Parties have exchanged voluntary discovery and conducted a thorough investigation into the Plaintiff's and the Opt-In Plaintiffs' claims and Defendants' defenses thereto;

WHEREAS, the Opt-In Plaintiffs consented to being represented by Sanford Law Firm, PLLC and to be bound by any settlement of this Lawsuit in their Consent to Join forms filed with the Court;

WHEREAS, Plaintiff's individual allegations of harassment and retaliation in the Lawsuit ("Individual Claims") are unrelated to the Opt-In Plaintiffs' wage-and-hour claims under the federal Fair Labor Standards Act and Arkansas Minimum Wage Act ("FLSA/AMWA Wage Claims"), and Plaintiff's Individual Claims are the subject of a separate settlement agreement ("Individual Settlement Agreement");

WHEREAS, the Parties participated in a full-day settlement mediation conference with mediator Allen Blair on December 10, 2019, at which time the Parties reached a resolution of the FLSA/AMWA Wage Claims portion of the Lawsuit ("Settlement"), as well as a separate resolution of the Plaintiff's Individual Claims; and

WHEREAS, the Parties desire to fully settle the Lawsuit in order to avoid the expense, uncertainty, and distractions of litigation;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the Parties agree, subject to the Court's approval, as follows:

1. **No Admission of Liability or Fault.** In entering into this Settlement Agreement, Defendants do not admit, and specifically deny, that they have: violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations, or legal requirements; breached any contract; or engaged in any other unlawful conduct with respect to their employees or any other person or entity. Neither this Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendants or the Released Parties of any such violation(s) or failure(s) to comply with any applicable law, who expressly deny any liability, wrongdoing, impropriety, responsibility, or fault whatsoever.

2. **Scope of the Settlement.** Subject to Court approval, the Settlement shall cover all Opt-In Plaintiffs who have filed Consent to Join forms in the Lawsuit. There are 11 Opt-In Plaintiffs, including Plaintiff. A list of all Opt-In Plaintiffs is attached hereto as Exhibit A.

3. **Settlement Amount.** As a settlement and compromise of this Lawsuit in exchange for the terms described herein, and without admitting the merits of any claim or defense, the Parties have agreed to a settlement of this matter covering all Opt-In Plaintiffs (as defined above in paragraph 2), under which Defendants will pay an "all in" settlement amount of $74,375.00 (the "Settlement Fund"). The Settlement Fund will be used to pay (a) all settlement payments to all Opt-In Plaintiffs; (b) all past, present, and future attorneys' fees, costs, expenses, and disbursements incurred by Plaintiff or Plaintiff's Counsel in the Lawsuit; (c) any settlement administration fees and expenses incurred by Plaintiff's Counsel; and (d) any *cy pres* charitable donation. The Settlement Fund will be allocated and paid as follows:

   a. **Payments to Opt-In Plaintiffs.**

      i. **Allocation of Individual Settlement Payments.** The total amount of the Settlement Fund allocated to the Opt-in Plaintiffs is $42,078.32. Plaintiff's Counsel have calculated the individual gross settlement amounts ("Opt-In Plaintiff Settlement Payments") to be allocated to the Opt-In Plaintiffs identified in Exhibit A based on the number of workweeks worked by each Opt-In Plaintiff in a Care Coordinator position and pro rata share of the total Settlement Fund, which calculations have been subject to reasonable review and approval by Defendants. The Parties agree that no Opt-In Plaintiff will receive less than a minimum Opt-In Plaintiff Settlement Payment of $100.00. A list of the Opt-In Plaintiff allocations is attached hereto in Exhibit A.

      ii. **Taxation.** Each Opt-In Plaintiff will receive two settlement checks consisting of the following: (a) one half (50%) of each Opt-In Plaintiff Settlement Payment will be paid and reported as wages for tax purposes, minus appropriate withholdings, with the Opt-In Plaintiff receiving an IRS Form W-2; and (b) the other half (50%) of each Opt-In Plaintiff Settlement Payment will be treated as a settlement of their claim for liquidated damages, exemplary damages, and interest, and will be paid and reported on an IRS Form 1099. Each Opt-In Plaintiff shall be responsible for paying any taxes due on his or her Individual Settlement Payment and agrees to indemnify and hold Defendants harmless for any taxes, interest, or penalties determined by the Internal Revenue Service or any other taxing authority to be due from the Opt-In Plaintiff Settlement Payment, other than the employer's share of payroll taxes on the wage payment. Defendants shall be separately responsible for paying the employer's portion of payroll taxes attributable to the portions of the Opt-In Plaintiff Settlement Payments that are characterized as wages.

b. **Attorneys' Fees and Costs.** As part of the mediation and settlement in this matter, the Parties negotiated and agreed that Plaintiff's Counsel will receive forty percent (40%) of the Settlement Fund as payment of all attorneys' fees incurred in the Lawsuit, plus actual costs and expenses incurred in the Lawsuit, for a total of $32,296.68, payment of which shall be subject to Court approval. In conjunction with the joint motion seeking final approval of the Settlement, Plaintiff's Counsel will request approval of the award of attorneys' fees and costs to be paid by Defendants as described herein. Defendants shall not oppose such a request. The Settlement shall not be contingent upon any particular amount of attorneys' fees or costs being approved and awarded by the Court. All amounts approved by the Court for attorneys' fees and costs will be paid to Plaintiff's Counsel and will be reported on an IRS Form 1099.

c. **Timing of Payment.** If the Settlement is granted final approval by the Court, it will become effective when either the appeal period expires with no appeal having been filed, or when any appeal is terminated (the "Settlement Effective Date"). Within 14 days after the Settlement Effective Date, Defendants shall process all settlement awards and the attorneys' fee and costs award and prepare and distribute the checks for Opt-In Plaintiffs and Plaintiff's Counsel to Plaintiff's Counsel.

d. **No Effect on Other Benefits.** The Parties agree that settlement payments under this Settlement shall not be considered compensation for hours of service or otherwise affect the calculation of benefits or eligibility under any employee benefit plans sponsored by Defendants or the Released Parties, including but not limited to vacation pay, holiday pay, pension, or retirement plan contributions.

e. **Cy Pres and Lost or Misdirected Payments.** Settlement checks will remain valid for 90 days after the date of mailing ("Check-Cashing Period"). If a Plaintiff's check is lost, destroyed, or otherwise unusable, the payee may notify Defendants, through counsel, within 90 days of the date of payment and Defendants will, upon verification that the original check has not been negotiated, issue a replacement. The payee shall have 90 days from the date of issuance to negotiate the replacement check. If for any reason there is a residual amount of the Settlement Fund remaining after the Check-Cashing Period, that amount will be donated to Legal Aid of Arkansas, subject to Court approval. Any failure of an Opt-In Plaintiff to cash or deposit a settlement check shall not affect the enforceability of the release. Any costs associated with administering the residual (*e.g.*, bank stop pay charges) will be deducted from the residual before donation to the beneficiary.

4. **Court Approval.** The Parties' Settlement of the FLSA/AMWA Wage Claims portion of this Lawsuit is contingent on final approval of the Settlement by the Court. The Settlement will become final and effective only when the Court enters an order granting final approval of the Settlement ("Final Approval Order"). The Parties shall jointly recommend to the Court that it approve the terms of this Settlement Agreement by filing a joint Motion with the Court seeking final approval of the Settlement ("Motion") in accordance with *Lynn's*

*Food Stores, Inc. v. United States, US Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

   a. **Cooperation.** The Parties shall undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement. The Parties agree to cooperate in negotiating (a) the allocation of the Opt-In Plaintiff Settlement Payments, (b) proposed deadlines for the settlement approval process, and (c) the settlement approval Motion and associated documents to be filed with the Court.

   b. **Process and Timeline.** The first draft of the joint Motion for approval of settlement and proposed Order will be prepared by Plaintiff's Counsel. Plaintiff's Counsel will draft the Motion and proposed Order in time to provide Defendants' Counsel with at least seven days to review and discuss any changes prior to filing. Plaintiff's Counsel will be responsible for filing the Motion in compliance with any applicable Court order or rules.

   c. **Final Approval Order.** The Motion shall seek a Final Approval Order that: (i) finally approves the Settlement Agreement as fair, adequate, and reasonable, and directs consummation of its terms and provisions; (ii) approves Plaintiff's Counsel's award of attorneys' fees and costs; and (iii) dismisses this Lawsuit on the merits and with prejudice and permanently bars all Opt-In Plaintiffs from prosecuting against the Released Parties any individual or class claims that are released by this Settlement Agreement.

5. **Dismissal of Claims.** Upon entry of the Court's Final Approval Order, all Opt-In Plaintiffs (including any Opt-In Plaintiffs who object to the Settlement) will have their claims in the Lawsuit dismissed with prejudice.

6. **Scope and Effect of the Release.** In consideration for Defendants' payment of the Settlement Fund as set forth in this Settlement Agreement, the Opt-In Plaintiffs shall fully, finally, and forever release, settle, compromise, relinquish, and discharge any and all of the Released Parties from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, losses, fines, liens, interest, restitution, actions, or causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Lawsuit or could have been alleged in the Lawsuit arising out of the facts or circumstances alleged in the Lawsuit through the date that this Settlement Agreement is fully executed, including federal, state, and municipal claims, and all related retaliation claims. The claims released by the Opt-In Plaintiffs (including any Opt-In Plaintiffs who object to the Settlement or fail to cash their Settlement checks) include but are not limited to all claims for the following: any claims for failure to pay minimum wages or overtime wages, or otherwise for failing to pay for all time worked, under the federal Fair Labor Standards Act ("FLSA") and any other applicable state and municipal law (including common law, statutes, ordinances, and regulations); any related retaliation

claims; any claims for failure to keep or furnish proper employment records under the FLSA or any other applicable state and municipal law; any claims for failure to make full and timely payment of wages under such laws; any claims related to any of the foregoing for liquidated, exemplary, or punitive damages or penalties; any claims related to any of the foregoing for equitable relief (including injunctive or declaratory relief); and any claims related to any of the foregoing for interest and attorneys' fees and costs. The Opt-In Plaintiffs likewise covenant not to sue the Released Parties with respect to any of the claims the Opt-In Plaintiffs have released.

The Released Parties shall include (i) Defendants and any parents, subsidiaries, affiliates, insurers, insurance policies, and benefit plans; (ii) each of the past and present officers, directors, agents, employees, equity holders (shareholders, holders of membership interests, etc.), representatives, administrators, fiduciaries, and attorneys of the entities and plans described in this sentence; and (iii) the predecessors, successors, transferees, and assigns of each of the persons and entities described in this sentence.

In addition, the Opt-In Plaintiffs acknowledge that as a result of the payments provided under this Settlement, the Opt-In Plaintiffs have been paid for all hours worked for Defendants through the date that this Settlement Agreement is fully executed.

7. **Communications Regarding Settlement.** Unless otherwise required by law, neither Plaintiff nor Plaintiff's Counsel shall make any public comment, communication to media, any form of advertising or public announcement (including through social media) regarding the Lawsuit or the Settlement. In response to inquiries, Plaintiff's Counsel may state that the case has been resolved, and may disclose any facts or terms that are part of the public record. Plaintiff and Plaintiff's Counsel agree that they will not solicit or encourage Opt-In Plaintiffs to object to the Settlement. Plaintiff and Plaintiff's Counsel will not make (or direct anyone to make) any negative or derogatory comment to any third party, including the media, current employees, consultants, customers, or prospects of Defendants, regarding Defendants, their businesses or operations, or their products. This provision does not preclude the Parties from making any communications required by the Court to approve the Settlement, this Settlement Agreement, or to administer the Settlement proceeds.

8. **Termination of Settlement Agreement.** Failure of the Court to approve the Settlement Agreement (after reasonable opportunity for the Parties to cure such problems as may initially prevent the Court from granting such approval) will be grounds for the parties to terminate this Settlement Agreement. A failure of the Court to approve the Settlement Agreement shall render the entire Settlement voidable and unenforceable as to all Parties herein at the option of the party adversely affected thereby. Each party may exercise its option to void this Settlement as provided in this paragraph by giving notice, in writing, to the other and to the Court within 14 days after the adverse Court order. In the event that a party exercises its option to void this Settlement, the Settlement Agreement shall become null and void *ab initio* and shall have no force or effect; all negotiations, statements, and proceedings related thereto shall be without prejudice to the rights of any party, all of whom shall be restored to their respective positions in the Lawsuit prior to the settlement; and

neither this Settlement Agreement nor any ancillary documents, actions, or filings shall be admissible or offered into evidence in the Lawsuit or any other action for any purpose.

9. **Destruction of Information.** Plaintiff's Counsel hereby confirm that they will destroy and will not use any contact information for non-opt-in plaintiffs that was produced in this Lawsuit because that information was produced solely for purposes of this Lawsuit.

10. **Settlement Disputes.** To the extent that the Parties cannot agree on any additional matters related to the preparation, execution, administration or enforcement of the Settlement not specifically covered herein, including any documents provided herein, the Parties agree to utilize the Mediator in this matter, Allen Blair, to resolve the same. The Mediator's determination on any such matters shall be final and binding and not subject to any further review or appeal. The Parties shall bear their own attorneys' fees and expenses in any matter submitted to the Mediator pursuant to this paragraph.

11. **Enforcement Actions.** The Court shall have continuing jurisdiction over the terms and conditions of this Settlement Agreement until all payments and obligations contemplated by the Settlement Agreement have been fully carried out. In the event that one or more of the Parties to this Settlement Agreement institutes any legal actions or proceedings to enforce or implement the provisions of this Settlement Agreement, the successful party or parties shall be entitled to recover from the unsuccessful party or parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection therewith.

12. **Captions and Interpretations.** Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital. The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties facilitated by an experienced employment law mediator and that this Settlement Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her or its counsel participated in the drafting of this Settlement Agreement.

13. **Entire Agreement.** This Agreement constitutes the entire and integrated agreement between the Parties with respect to the Settlement of the FLSA/AMWA Wage Claims portion of the Lawsuit, and all other prior and contemporaneous agreements, representations, warranties, or understandings of the Parties are superseded and merged into this Settlement Agreement, with the exception of the Individual Settlement Agreement. This Settlement Agreement may not be modified, except in writing and signed by the Parties hereto, and, if changed after the Final Approval Order, approved by the Court.

14. **No Reliance.** The Parties acknowledge that they have not relied on any promise, representation or warranty, express or implied, not contained in this Agreement.

15. **Assignments.** The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

16. **Plaintiff's Signatory.** It is agreed that because the Opt-In Plaintiffs are so numerous, it is impractical to have each Opt-In Plaintiff execute this Settlement Agreement. In their Consent to Join forms filed with the Court, each Opt-In Plaintiff consented to be represented by Sanford Law Firm, PLLC and to be bound by any settlement of this Lawsuit. Pursuant to this authority, Plaintiff's signature below is made on behalf of each Opt-In Plaintiff, and this Settlement Agreement shall have the same force and effect as if this Agreement were executed by each Opt-In Plaintiff.

17. **Execution in Counterparts.** This Settlement Agreement may be signed in one or more counterparts, including by copies transmitted via facsimile or electronic delivery. Upon a party's execution of a counterpart, that counterpart shall be deemed an original, and all signed counterparts shall together constitute one Settlement Agreement. A facsimile signature shall have the same force and effect as the original signature, if and only if it is transmitted from counsel for one party to the other. Such transmissions shall be interpreted as verification by the transmitting counsel that the signature is genuine and that the party signing has authorized and reviewed the agreement. All executed copies of this Settlement Agreement and copies thereof shall have the same force and effect and shall be as legally binding and enforceable as the original.

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement as of the date indicated below:

Plaintiff, On Behalf Of All Opt-In Plaintiffs

Dated: _____   By: _____
                            Taquilla Hatch

Centene Management Company, LLC,

Dated: 2/10/20   By: _____
                     Its authorized agent, Defendant

Arkansas Total Health, Inc.,

Dated: 2/11/2020   By: _____
                        Its authorized agent, Defendant

7

15. **Assignments**. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

16. **Plaintiff's Signatory**. It is agreed that because the Opt-In Plaintiffs are so numerous, it is impractical to have each Opt-In Plaintiff execute this Settlement Agreement. In their Consent to Join forms filed with the Court, each Opt-In Plaintiff consented to be represented by Sanford Law Firm, PLLC and to be bound by any settlement of this Lawsuit. Pursuant to this authority, Plaintiff's signature below is made on behalf of each Opt-In Plaintiff, and this Settlement Agreement shall have the same force and effect as if this Agreement were executed by each Opt-In Plaintiff.

17. **Execution in Counterparts**. This Settlement Agreement may be signed in one or more counterparts, including by copies transmitted via facsimile or electronic delivery. Upon a party's execution of a counterpart, that counterpart shall be deemed an original, and all signed counterparts shall together constitute one Settlement Agreement. A facsimile signature shall have the same force and effect as the original signature, if and only if it is transmitted from counsel for one party to the other. Such transmissions shall be interpreted as verification by the transmitting counsel that the signature is genuine and that the party signing has authorized and reviewed the agreement. All executed copies of this Settlement Agreement and copies thereof shall have the same force and effect and shall be as legally binding and enforceable as the original.

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement as of the date indicated below:

Plaintiff, On Behalf Of All Opt-In Plaintiffs

Dated: 2/10/2020     By: _____
                          Taquilla Hatch

Centene Management Company, LLC,

Dated: _____ By: _____
                          Its authorized agent, Defendant

Arkansas Total Health, Inc.,

Dated: _____ By: _____
                          Its authorized agent, Defendant

7

# EXHIBIT A

| | |
|---|---|
| Baker | $4,831.17 |
| Chandler | $4,779.83 |
| D'Anna | $2,629.32 |
| Drayer | $3,591.95 |
| Finch | $1,930.39 |
| Hatch | $2,205.92 |
| Haywood | $745.04 |
| Hunter | $7,784.83 |
| Juniel | $8,282.00 |
| Mosby | $4,693.80 |
| Robinson | $604.07 |
| **TOTAL** | $42,078.32 |